# Sellers & Co. v. Malone-Pilcher Co.

## Trover and Trespass.

(Decided June 15, 1907.    44 South. 414.)

1. *Principal and Agent; Undisclosed Agency; Right of Undisclosed Principal.*—An undisclosed principal may sue on a contract in his own name made by an undisclosed agent, but such undisclosed principal takes the contract subject to all the rights and equities available to the other party against the agent if he was suing.

2. *Same; Acts in Agent's Name.*—Where a principal places articles in the hands of his undisclosed agent authorizing the agent to trade them for other articles and to execute a mortgage to secure any dif-

ference, and the agent trades with another without disclosing the agency, giving a mortgage to secure the difference, the principal cannot dispute the other's claim to the articles mortgaged, since he takes the contract subject to all the rights and equities available against the agent.

3. *Mortgages; Release and Satisfaction; Tender.*—Where an undisclosed agent acting for his undisclosed principal executed two chattel mortgages to another on the same day and payable at the same time, each containing a stipulation that they were given to secure a sum represented by a note, as well as any other amount which the mortgagor might owe the mortgagee at or before the payment of the note, each mortgage stood as security for the debt expressed in the other, as well as the debt primarily secured, and the mortgagee was not required to surrender one on the offer of the undisclosed principal to pay the amount due thereon unless an offer was also made to pay the other.

4. *Pleading; Issue and Proof.*—In an action on the case for the reversionary interest of the undisclosed principal in a mule mortgaged by the undisclosed agent, the question of what the mortgagee would owe the undisclosed principal ultimately on the transaction was not before the court and evidence as to the proof of the value of the mule was not an issue.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by N. L. Sellers & Co. against the Malone-Pilcher Co., in trespass, trover and case. From a judgment for defendant plaintiff appeals. Affirmed.

REID & HILL, for appellant.—The duty to make a tender may be waived.—21 Ala. 782; 99 Ala. 90. Plaintiff had the right to tender the money and then sue.— *Frank v. Pickens,* 69 Ala. 369.

ESPY & FARMER, for appellee.—Counsel discuss a motion to strike the bill of exceptions and cite authorities.

The condition coupled with the tender destroyed its efficacy.—*Wilhite v. Ryan,* 66 Ala. 106; *Commercial F. Ins. Co. v. Allen,* 80 Ala. 670; *Odom v. R. & J. R. R. Co.,* 94 Ala. 488. The offer did not amount to a tender and there could be no waiver.—28 A. & E. Ency. of Law, 6. The tender was not kept or made good.—*Frank v. Pickens,* 69 Ala. 368. The following cases are conclu-

sive of appellant's right to recover.—*Maxwell v. Moore,* 95 Ala. 166; *Hamaker v. Bynum,* 137 Ala. 391; *Wittmier v. Tidwell,* 40 South. 963; *Frank v. Pickens, supra.*

HARALSON, J.—In the original complaint there were two counts, one in trespass and the other in trover; the first, alleging that the defendant, Malone-Pilcher Company, wrongfully took, and the other that it converted, a mule, the property of plaintiffs. The complaint was amended by adding a count—the third—in case, for destroying plaintiffs' right to or lien on said mule, and the case was tried on this count.

The trial was had on the plea of the general issue; and the court, at the request of defendant, gave the general charge in its favor.

The case is here for review on this charge, and on errors assigned for the rejection of evidence offered by plaintiffs, for the purpose of showing the value of the mule, and also on a question of tender.

The facts, without conflict, showed that plaintiffs, in 1904, placed in the possession of S. E. Pate, for the purpose of working them, two mules, one of which is the subject of this suit, and agreed to sell them to him the following fall, if said Pate was able to pay for them. No amount was agreed on as the purchase price of the mules, if Pate decided to buy them. If, in the fall, he was unable to pay for them, he was to pay a reasonable rent for the time he had them. No trade was ever consummated between plaintiffs and Pate for the mules.

The mules did not suit Pate, and plaintiffs, if such should turn out to be the case, authorized him to trade them for other stock, and, if it became necessary to give boot, to pay the difference between the value of the mules traded and those acquired in the trade, and Pate was authorized by plaintiffs to execute a mortgage on

the mules traded for, to secure this difference.  He
traded or swapped one of the mules to defendant, and
acquired in the trade the one sued for, agreeing to pay
$94.15 as a difference in the value of the mules.  To
secure this sum, on the 17th day of October, 1904, he
executed a note and mortgage to defendant, on this mule,
for that sum, payable on the 15th of September, 1905.
On the same day he gave the defendant a note and mort-
gage, payable at the same time as the other mortgage,
on another mule, but not one that he acquired from
plaintiffs.

The complaint alleges that Pate obtained possession
of said mule—the one traded for from defendant—act-
ing for and as the agent of plaintiffs, in exchange for
the mule, for the one belonging to plaintiffs and traded
to defendant; that said Pate agreed to and bound him-
self to pay defendant $94.15, the difference in value of
the two mules, which sum was evidenced by note and
secured by a mortgage on the mule thus acquired in ex-
change.  The note and mortgage were signed, as alleged,
and as the evidence shows, by said Pate, in his own
name.

The defendant for an alleged default in said mort-
gage, as is alleged, wrongfully seized and sold said mule,
on the 19th of September, 1905, after default in said
mortgage, by which plaintiffs' reversionary interest and
right to said mule was wholly lost.  It is further alleged
that prior to the seizure of said mule by defendant,
plaintiffs tendered the entire sum of $94.15, the amount
of Pate's mortgage, to defendant, and notified defend-
ant, that said debt was due by plaintiffs and that said
mule was their property, but defendant failed and re-
fused to accept the money so tendered and thereafter
placed said mule beyond the reach and control of plain-

tiffs, whereby their right and interest therein were destroyed.

This suit is between Sellers & Co. and the defendant, between whom there were no contract relations in respect to plaintiffs' mules, and the one acquired by Pate in the trade or swap he made with defendant for the mule in suit. The complaint, as has been seen, alleged that Pate made the trade with defendant as the agent of the plaintiffs, but there is an entire lack of evidence, and it is without conflict, to show that defendant knew anything about the plaintiffs' interest in and ownership of the mules they let Pate have to work or trade, or that Pate was the agent of and acting for plaintiffs in the transaction. Pate, examined in behalf of plaintiffs, testified, that after trading for said mule, he carried it home and informed plaintiffs of the trade he had made, and plaintiffs delivered this mule to him under the same agreement as was made with reference to the first pair of mules, and he held and worked said mule until it was seized and carried away by defendant; "that he did not inform defendant, at the time of the swap, that he was trading for plaintiffs; that the trade was made with J. G. Owens, who was in the employ of defendant at the time."

The plaintiffs thus armed Pate to deal with this mule as his own property, and not as the property of plaintiffs. He hal the animal in his possession and was treating it as his own, and was doing this with the knowledge and consent of plaintiffs, of whose title and interest in the mule, defendant was in ignorance. If any damage came to plaintiffs, on account of the conduct of Pate, it was their fault, and not that of defendant. Under the circumstances, plaintiffs have themselves to blame and not defendant, for any injury of which they complain. The title acquired by defendant from Pate

plaintiffs cannot be allowed now to dispute. To allow them to do so, would be to authorize them to take advantage of their own wrong, if any was perpetrated.

There can be no doubt that Pate was the agent of plaintiffs in this transaction, and that he made the contract for the benefit of his principals, although he did not disclose to defendant, at the time of the trade, that he was acting as their agent. The plaintiffs being the real parties in interest, it would make no difference that this agency was unknown and not disclosed to defendant, at the time of Pate's transaction as agent with it, and they were authorized to sue on it in their own names. The principal takes the contract, in such case, subject to all the rights and equities available to the other party, as against the agent if he were suing.— *City of Huntsville v. H. G. Co.,* 70 Ala. 191; *Bell v. Reynolds,* 78 Ala. 511, 56 Am. Rep. 52; *McFadden v. Henderson,* 128 Ala. 229, 29 South. 640; *Manker v. W. U. Tel. Co.,* 137 Ala. 294, 34 South. 839.

The count avers that prior to the seizure of said mule by defendant, plaintiffs tendered to the defendant the entire sum due on said mortgage, to-wit, $94.15, and defendant failed and refused to accept the money and failed and refused to deliver their mortgage. The proof showed, that plaintiffs offered to pay said mortgage and the expenses incident to it, if defendant would deliver up the mortgage for $94.15, which defendant refused to do unless plaintiff paid the other mortgage of $45.65, also.

Both of these mortgages, executed as stated, on the same day, and payable at the same time, the 15th of September, 1905, contained the provision that they were each given the one to secure a debt of $45.65, "as well as any other amount we or either of us now owe or may owe said Malone-Pilcher Company, at or before the pay-

ment of this note," and the other to secure a debt of $94.15, with a like provision as that copied from the $45.65 mortgage.  Both mortgages were introduced in evidence without objection.  Each of these mortgages was made, and stood as a security, not only for the debt it primarily secured, but, also, for the lebt expressed in the other.  The defendant had the right, therefore, to decline to surrender the $94.15 mortgage, unless the $45.65 mortgage, was also taken up, which the plaintiffs nor Pate offered to pay.  The alleged tender was made as stated, conditioned on the surrender of the mortgage for the larger amount, and it is not shown, that it was kept good by keeping the money safely, ready to pay it over whenever the other party might manifest his willingness to accept it, nor was the amount tendered produced and placed in the custody of the court, so that, if the tender was adjudged good, the money might be awarded to the party to whom it was ascertained to rightfully belong.—*Frank v. Pickens,* 69 Ala. 369; *Wilhite v. Ryan,* 66 Ala. 106; *Maxwell v. Moore,* 95 Ala. 170, 10 South. 444, 36 Am. St. Rep. 190; *Hamaker v. Bynum,* 137 Ala. 394, 34 South. 405.

The defendant did not refuse to receive the $94.15 tendered, if not required to surrender the mortgage to secure it, good as a security for that debt, as well as for the debt secured by the $45.65 mortgage; but the plaintiffs, in making the tender, required that said mortgage should be surrendered, which they had no right to do.

What the defendant would owe the plaintiffs ultimately, on this transaction is not now before us.  It may be, on the foreclosure of both of said mortgages, according to their terms, if the sum realized amounted to more than Pate's indebtedness to defendant, the plaintiffs might maintain an action for money had and received, but not, as here, in an action on the case, for the amount

of the reversionary interest of plaintiffs in the property sold, as claimed in the third count of the complaint, on which the case was tried. Nor could there be a recovery for trespass or trover, under the facts shown, as set up in the first and second counts.

There was no error, therefore, in the rulings of the court, refusing to allow proof of what the mule sued for was worth, at the time of the trade with defendant, and at the time of the trial.

The giving of the affirmative charge for defendant was without error.

Affirmed.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.