### H. L. LEFEBVRE *vs.* TOWN OF PEMBROKE.

Plymouth.   February 7, 1935. — February 26, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Contract*, What constitutes, Implied, For the supplying of water.   *Water*.

A city was authorized by statute to take water from a source located in a town and, upon application by the selectmen of the town, to supply water to it and to the inhabitants thereof. Upon application thereafter made to the city by one who owned property adjacent to the city's main in the town, the city for many years supplied him with water through a service pipe connected with the main. At the end of that period, another statute authorized the town to supply itself and its inhabitants with water, and authorized the city to sell and the town to buy the water. Pursuant to the later statute, the city and the town made a contract for the sale and purchase of water in bulk for distribution by the town to its inhabitants, which contract contemplated that individuals in the town whose service pipes were already connected with the city's main should continue to take water therefrom and provided that the city should bill the town for such

services. Thereafter, to the knowledge of such property owner and without protest by him, water was so supplied to him for about a year, and quarterly bills therefor were sent to him by the town. In an action by him against the town involving the issue whether he was liable to it for such charges, he contended in substance that he was not liable in that there was no contractual relationship between him and the defendant. *Held,* that

(1) There was no merit in a contention by the plaintiff that there was between him and the city a contract which obliged it to supply him with water indefinitely; the two statutes gave to the town the exclusive right to supply its inhabitants with water and were a justification of the refusal of the city to continue to supply the plaintiff;

(2) A finding was warranted that the water supplied to the plaintiff after the making of the contract between the city and the town was supplied by the town under an implied contract between the plaintiff and the town, requiring him to pay it therefor.

CONTRACT. Writ in the Third District Court of Plymouth dated October 29, 1932.

The action was heard in the District Court by *Briggs,* J. Material facts are stated in the opinion. The judge found for the defendant. Upon petition by the plaintiff to the Appellate Division for the Southern District, a report was established, and subsequently was ordered dismissed. The plaintiff appealed.

*T. W. Prince,* for the plaintiff.

*J. J. Geogan,* for the defendant.

PIERCE, J. This is an action of contract tried in the District Court whereby the plaintiff seeks to recover, as money had and received to his use, the sum of $26.09 paid by him, under protest, to the defendant "for water unfairly and inequitably charged against the plaintiff by the defendant." The answer is a general denial.

At the trial, the judge made certain rulings, some requested by the plaintiff and some by the defendant; refused certain rulings requested by the plaintiff; found the facts hereinafter set forth; and found for the defendant.

The report contains all the evidence material to the questions reported. The judge states that the plaintiff claims to be aggrieved by "(1) The rulings and refusal to rule as requested; and (2) The final finding of the court in that it is based upon certain findings of fact hereinbe-

fore set forth alleged by him to be plainly wrong, mutually inconsistent or contradictory, or vitiated in view of controlling principles of law." The judge reported the alleged grievances to the Appellate Division for determination.

By St. 1899, c. 356, the city of Brockton, hereinafter called the city, was given the right to take water from Silver Lake, which is situated partly within the town of Pembroke, hereinafter called the town or defendant. The water main of the city was located on School Street in the town, a public way, on which the plaintiff has lived and has occupied a dwelling house since 1913. St. 1899, c. 356, § 9, provided that the city should, upon application by the selectmen of the town, supply such town with water from Silver Lake for the extinguishment of fires and for domestic and other purposes. Section 10 provided that the price to be paid by any person taking water under the authority of the selectmen of such town might be agreed upon or determined by three commissioners to be appointed by the Supreme Judicial Court. Section 11 provided that the town might take an independent supply of water from Silver Lake, provided satisfactory arrangements could not be made with the city therefor.

At various times since 1901, the city has installed service connections between said water main and various buildings situated on said School Street and has continuously supplied said buildings with water for domestic and other purposes up to June 4, 1931. The plaintiff, on November 28, 1913, made an application to the city which reads: "Register No. 9074. Brockton, Mass., Nov. 28, 1913. A supply of water is desired at premises No. Bryantville, School Street. owned by H. L. Lefebvre to be used for the following purposes only To be furnished, and for which I agree to pay in accordance with the Rules, Rates, and Regulations of the Brockton Water Department. H. L. Lefebvre, Applicant."

By St. 1930, c. 280, the town was given the right to supply itself and its inhabitants with water. Section 1 of that act provided that the town could purchase the water from the city and the city was authorized to sell water to

the town. By vote of the town passed at a legally called meeting, held on October 18, 1930, the town accepted said provisions of St. 1930, c. 280; and on April 21, 1931, entered into a contract with the city to purchase water from it. This agreement is set out in full in the record of the pending case.

Thereafter, in pursuance of said act, the town constructed numerous water mains which were connected with the mains of the city, and furnished its inhabitants with water. The water furnished by the city and delivered to the mains of the town was measured by master meters, in accordance with the agreement, and was furnished by the town to its inhabitants by services installed at the various residences at the expense of the owners. No change was made at the residence of the plaintiff or of others who had been taking water from the city on School Street. The contract between the city and town provided, "in the case of individual water service connections already installed in the Town and connected with mains belonging to the City, that all bills . . . for individual water service will be rendered against the Board of Water Commissioners of the Town at the established rates of the City for each particular kind of service. The City agrees that the bills aforementioned under this paragraph will be rendered and payment by the Town will be due at the same time as provided in paragraph 4 for quarterly bills for water sold to the Town through master meters." "The City also agrees that it will maintain and keep in good repair the individual water service connections referred to in this paragraph and their meters . . . ." After the execution of the contract the town sent the various users of said water supply quarterly statements, and, more particularly, sent the plaintiff quarterly, from October 1, 1931, up to and including July 1, 1932, the bills set forth in the report, amounting to $26.09. On August 3, 1932, the plaintiff paid the treasurer of the town $26.09 under protest.

It is the contention of the plaintiff that the city could supply water to the plaintiff only under St. 1899, c. 356, or to the town only under St. 1930, c. 280; that there was no middle course; that a delivery of water to the plaintiff

would constitute a delivery of water to the defendant only when it was delivered at the request of said town, in performance of a contractual obligation of said town to said plaintiff; that in the absence of such contractual obligation said city would have no authority to treat a delivery of water to the plaintiff as a delivery to the defendant town. The plaintiff further contends that "In the absence of a request by the plaintiff to the defendant town for a supply of water, no obligation to said town on the part of the plaintiff can be implied by reason of the delivery of water by the said city to the plaintiff"; that payment by the defendant town to the city for water so supplied would constitute the expenditure of municipal funds for the benefit of an individual, which is forbidden by law; that if, on the other hand, the said city delivered water to the plaintiff other than in the performance of a contractual obligation between said defendant town and the plaintiff, it was a sale to the plaintiff by said city, which could collect therefor, legally, only from the plaintiff; and that in these circumstances the law would not imply a contract between the plaintiff and said town. Otherwise stated, the plaintiff contends that, there being no express contract with the town, there can be on the facts in this case no implied contract with the town; that there is no privity of contract established between the plaintiff and the town, and without such privity the possession and use of the water supplied by the city would not support an implied assumpsit; that no presumption of assent can be implied from the mere reception and use of water supplied to the plaintiff by the city; and that a party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him.

In support of these positions the plaintiff invokes certain principles of law laid down by the court in the case entitled *Boston Ice Co.* v. *Potter*, 123 Mass. 28. That case decided that the personality of a person delivering goods to another, or otherwise performing services beneficial to another, may be of prime importance and not a matter of indifference to the person sought to be charged for the

goods received or for the benefit of the services rendered; and that this principle is particularly applicable if the person sought to be charged did not wish to deal with the person said to have delivered the goods or to have rendered other service. *Dwight R. Woodford Co. Inc.* v. *Johnson*, 281 Mass. 391. *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436, 442. *Gordon* v. *Street*, [1899] 2 Q. B. 641. *Smith* v. *Wheatcroft*, 9 Ch. D. 223. In the case at bar the plaintiff must have known of the legislation which authorized the contract with the city; that the contract was made in pursuance of the said authorization; and that after the agreement was executed the water, previously supplied by the city, was supplied by the town. The agreement with the city was executed on April 21, 1931, and became operative at once. On October 1, 1931, and on the first day of January, April and July, 1932, the plaintiff received quarterly bills from the town. Thereafter he had actual knowledge that the town was supplying him with water under its contract with the city, and he received and assented to the delivery of the water upon his premises without protest. This fact brings the case at bar within the principle recognized in *Boston Ice Co.* v. *Potter*, that, if the element of personality does not enter into a contract for the delivery of goods which are in fact received and consumed, the vendee cannot annul the contract and the contract ought to stand. The plaintiff's argument is predicated almost entirely on the supposition that he had a contract with the city which obligated the city to supply him with water indefinitely. On the facts shown by the report, the case of *Merrimack River Savings Bank* v. *Lowell*, 152 Mass. 556, does not support the plaintiff's contention. It is plain that St. 1899, c. 356, and St. 1930, c. 280, gave to the town the exclusive right to supply its inhabitants with water and were a justification of the refusal of the city to continue to supply the plaintiff or other citizens of Pembroke with water. No question of the reasonableness of the charge for water by the town is argued by the plaintiff. See *Souther* v. *Gloucester*, 187 Mass. 552, 555. The complaint of the plaintiff is that the town charges its individual inhabitants more

for water than the city did. This was not a legal reason for the reversal of the findings of the trial judge by the Appellate Division.

The many requests of the plaintiff have been considered. Without discussion of them, other than appears in the opinion, we find no error in the denial of such of them as were denied. It follows that the order of the Appellate Division, "Report dismissed," is

*Affirmed.*